# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY LINE COURTOIS | : |
| | : CIVIL ACTION |
| Plaintiff | : |
| | : |
| vs. | : |
| | : NO. 17-CV-5740 |
| TMG HEALTH, INC. | : |
| | : |
| Defendant | : |

## MEMORANDUM AND ORDER

**JOYNER, J.**                                               **June 4, 2018**

This case is presently pending before this Court on Motion of the Defendant, TMG Health, Inc. to Transfer Venue to the United States District Court for the Middle District of Pennsylvania. For the reasons outlined in the paragraphs which follow, the motion shall be granted.

## Factual Background

The instant litigation arises out of the March 3, 2017 termination of Plaintiff, Kimberly Line Cortois, from her position as the Defendant's Vice President of Human Resources. At the time of her termination, Ms. Cortois was 58 years of age and had held her position for ten years. Plaintiff's complaint avers that she was fired without cause and that she was the only

1

female employee over the age of 50 reporting directly to Susan Rawlings Molina (the President and Chief Executive Officer of TMG), whose employment was terminated. The complaint further alleges that inasmuch as she was replaced by someone who was ten years younger, Plaintiff's firing was violative of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §626, *et. seq.*, Title VII, 42 U.S.C. §2000e-5, *et. seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2617, *et. seq.*, and the Pennsylvania Human Relations Act ("PHRA), 43 P.S. §951, *et. seq*.

After answering the complaint and generally denying the allegations that Plaintiff's termination was discriminatorily motivated and unlawful, TMG now seeks to transfer venue from this Court to the Middle District of Pennsylvania in Scranton. In support of its motion, Defendant notes that the Plaintiff herself resides in Kingston, Pennsylvania which is some 21 miles from the federal courthouse in Scranton and that her office had been located at TMG's National Center of Excellence for Medicare/Medicaid Services in Jessup, Pennsylvania, approximately 13 miles from Scranton. Thus, argues Defendant, the Middle District is a more appropriate and convenient venue for adjudicating this dispute than is the Eastern District.

## **Discussion**

In filing its motion, Defendant specifically invokes 28 U.S.C. §1404, subsection (a) of which reads:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district of division to which all parties have consented.

As is obvious from the language of the statute, the threshold question under §1404(a) is whether the proposed venue is an appropriate one. Cameli v. WNEP-16 The News Station, 134 F. Supp. 2d 403, 405 (E.D. Pa. 2001). The moving party bears the burden of proving that venue is proper in the transferee district and that transfer is appropriate, *i.e.*, that transfer will serve the convenience of the parties and witnesses and will promote the interest of justice. Jumara v. State Farm Insurance Co., 55 F.3d 873, 879 (3d Cir. 1995); Lindley v. Caterpillar, Inc., 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000). Further, the Supreme Court has observed that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization, Inc. v. Ricoh Corp., 497 U.S. 22, 29 108 S. Ct. 2239, 2244, 101 L. Ed.2d 22 (1988)(quoting Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S. Ct. 805, 812, 11 L. Ed.2d 945 (1964)).

In undertaking this individualized analysis, Courts in the Third Circuit are called upon to balance a variety of private and public interest factors in reaching their conclusions regarding whether transfer is or is not properly granted. Although not

exclusive, the private factors which are appropriately considered include: (1) the plaintiff's choice of forum as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). Jumara, supra; Navetta v. KIS Care School, Inc., Civ. A. No. 14-5724, 2016 U.S. Dist. LEXIS 59113 at *5 (E.D. Pa. May 4, 2016). The relevant public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id, at 879-880; Cameli, supra.

*A. Private Interest Factors*

As a general legal principle, "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request and that choice should not be lightly

4

disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); Navetta, 2016 U.S. Dist. LEXIS at *6. Where, however, the operative facts and the events giving rise to the lawsuit took place outside of the chosen forum, the plaintiff's venue selection is entitled to considerably less deference. Aetna, Inc. v. People's Choice Hospital, LLC, Civ. A. No. 17-4354, 2018 U.S. Dist. LEXIS 40689 at *9 (E.D. Pa. Mar. 13, 2018); Cameli, supra. Likewise, "[w]hen the plaintiff is not a resident of the chosen forum, she must make a strong showing of convenience in order for her choice to be given deference." Navetta, at *7 (citing Windt v. Qwest Communications International, Inc., 529 F.3d 183, 190 (3d Cir. 2008)). And, "when the vast majority of the acts giving rise to the plaintiff's claims take place in another forum, that weighs heavily in favor of transfer." Jelley v. Colton Auto, Inc., Civ. A. No. 17-1221, 2018 U.S. Dist. LEXIS 13678 at *10 (W.D. Pa. Jan. 29, 2018); Hamilton v. Nochimson, Civ. A. No. 09-2196, 2009 U.S. Dist. LEXIS 62644 at *8 (E.D. Pa. July 21, 2009); Hayes v. Transcor America, LLC, Civ. A. No. 08-293, 2009 U.S. Dist. LEXIS 53074 at *14 (E.D. Pa. June 23, 2009).

Here, Plaintiff resides in Kingston, Pennsylvania and by her own admission, worked "day-to-day out of" Defendant's Medicare/Medicaid Services location at 25 Lakeview Drive, Valley View Business Park, Jessup, Luzerne County, Pennsylvania. Hence,

5

both Plaintiff's residence and her place of employment are situate in the Middle District and from this we conclude that while Plaintiff's choice of forum is entitled to some deference, it is not entitled to the same weight as it would have been were Plaintiff a resident of the Eastern District and when considered in tandem with Defendant's forum preference, we find these factors to essentially be on par with one another.

In looking to where the underlying claim arose, we note that although Plaintiff's declaration asserts that she frequently traveled to Defendant's corporate headquarters which was at all relevant times located in the Eastern District[1] and reported to and regularly communicated with several executive level employees who worked out of the corporate headquarters, it appears that Ms. Molina had an office in both locations and that she likewise regularly traveled to the Jessup office. Although Plaintiff asserts that her compensation was determined by the executive compensation group which was located at the corporate headquarters in Conshohocken, the Plaintiff's termination occurred from the Jessup offices. In this regard, the Declaration of Michael Walsh, TMG's General Counsel and Interim Corporate Development Officer, states that both he and Ms. Molina

---

[1] Presently TMG's corporate headquarters is located at 100 Four Falls Corporate Center in Conshohocken, Pennsylvania. Previously, it was located nearby King of Prussia, PA. (Declarations of Michael P. Walsh and Kimberly Line Cortois, annexed as Exhibit "A" to Defendant's Motion to Transfer Venue and Plaintiff's Response in Opposition thereto).

were in the Jessup office with the specific intention of meeting with Plaintiff to inform her of her termination but when she did not come into the office on March 3, 2017, they instead notified her that she was fired by telephone. Thus, we find that the Plaintiff's claims actually arose in the Middle District and that this element militates in favor of transfer.

Next, it appears that nearly all of Defendant's domestic workforce – some 1,250 people, are employed at its Luzerne County location and that only approximately 30 executive employees work out of the Conshohocken office. Included among those employees who work in Jessup are many of the individuals whom Plaintiff identified in her complaint, such as Trish Savitsky, Keisha Pinnock, Doug Albro, and Holly Kubicki as well as several other potential witnesses. While the declarations and pleadings are silent as to whether any of these potential witnesses may be unavailable if required to travel to Philadelphia, we believe that common sense dictates that it would be more convenient for them if this matter were to be litigated in Scranton. Accordingly, this factor weighs slightly in favor of transfer.

Finally, it appears that Defendant's records, whether electronic or otherwise, are maintained in both locations. Consequently, we find this element to be in equipoise.

B. *Public Interest Factors*

Turning next to the so-called public interest factors, we

find that both the pleadings and evidentiary declarations are silent as to the enforceability of any judgment(s) that may emanate from the case and the relative docket or court congestion attendant to both this Court and that in the Middle District. Suffice it to say, we are unaware of any significant disparity in backlogs between this Court and the Middle District or that there would be any difficulty in enforcing a judgment from either district which would be remedied by the issuance of a judgment from the other. Nor, given that this matter involves the application primarily of federal employment statutes and one Pennsylvania state statute, are there any differences between the familiarity of this judge and any other judge sitting on the Middle District bench with the applicable law. As a result, none of these public interest factors either favors or disfavors transfer.

We do believe, however, that inasmuch as Plaintiff is a Middle District resident, wage earner and taxpayer, that the local interests of that forum are certainly far more vested and interested in the resolution of this controversy than would be the case were this matter to be litigated to conclusion here. What's more, when the practical logistics of trying the case are considered, it seems self-evident that because most of the witnesses and interested parties (including Plaintiff herself) are located in the Scranton area, it would be far easier and more

8

convenient if this matter was tried before a judge and jury in the Middle District.

## **Conclusion**

Having now considered the numerous public and private interests of the parties as suggested by the Stewart Organization and Jumara decisions, we find that the balance of equities favors transfer of this matter to the United States District Court for the Middle District sitting in Scranton.  We therefore shall grant Defendant's Motion to Transfer and enter an appropriate order to that effect.

That Order follows.